UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARCOS ANTONIO LABORDE
CASALLAS,

      Petitioner,

   v.                         Case No.:  2:26-cv-02137-SPC-KRH

GARRETT J. RIPA *et al.*,

      Respondents,

_____/

### AMENDED[1] OPINION AND ORDER

Before the Court are Marcos Antonio Laborde Casallas's Petition for Writ of Habeas Corpus (Doc. 1) and the government's response (Doc. 7).

Laborde Casallas is a native of Cuba who entered the United States in October 2022.  Immigration and Customs Enforcement ("ICE") released him into the country on an order of release on recognizance.  Laborde Casallas complied with all terms of the order and has no criminal record whatsoever. He also has pending applications for asylum and adjustment of status.  On September 25, 2024, ICE commenced removal proceedings by issued a notice to appear.  On November 6, 2025, Laborde Casallas reported to ICE for a check-in appointment, and ICE detained him.  An immigration judge ordered

---

[1] This amendment corrects an inconsistency on page 6.

Laborde Casallas removed to Ecuador on February 11, 2026. Laborde Casallas appealed the removal order, so it is not administratively final.

On February 26, 2026, Judge John Steele ordered the government to bring Laborde Casallas before an immigration judge for a bond hearing. On March 4, 2026, Immigration Judge Michael Walleisa denied Laborde Casallas's request for release on bond because Laborde Casallas "has not met his burden of demonstrating that he is not a risk of flight." (Doc. 1-4 at 2).

In his habeas petition, Laborde Casallas claims (1) his unreasonably prolonged detention violates the Fifth Amendment, (2) denial of bond was arbitrary and unlawful, and (3) his re-detention was unlawful and arbitrary. He asks the Court to order the respondents to either release him or afford him an individualized bond hearing at which the government bears the burden of proof. In response, the government argues that the Court lacks jurisdiction to consider Laborde Casallas's claims, and that the Board of Immigration Appeals ("BIA") is the proper venue. The government points to a subsection of the Immigration and Nationality Act that strips the Court of jurisdiction to review an immigration judge's discretionary bond decisions:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

8 U.S.C. § 1226(e).  § 1226(e) only partially applies here.  It bars the Court from considering Ground 2, which is a direct challenge to the immigration judge's bond decision.  But the Court can consider Laborde Casallas's bona fide due process claim challenging the constitutionality of his current, prolonged detention.

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  *Reno v. Flores*, 507 U.S. 292, 306 (1993).  Immigration detention is civil in nature, and civil detention violates the Fifth Amendment unless "a special justification…outweighs the individual's constitutionally protected interest in avoiding physical restraint."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (internal quotation marks and citation omitted).

The Supreme Court has long recognized that "due process is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1976).  Courts looks to three factors when considering what process is due in a given situation: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and

administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

All three factors weigh in Laborde Casallas's favor. First, his interest in freedom from detention "lies at the heart of the liberty" the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. Second, the risk of erroneous deprivation of that interest is substantial here. While there is no hard limit on how long a noncitizen can be detained under § 1226(a), the longer the duration of Laborde Casallas's detention, the greater the deprivation of his right to liberty. In the context of post-removal-order detention under § 1231, the Supreme Court limited the presumptively reasonable period of detention to six months. *Id.* at 701. The Court noted "that Congress previously doubted the constitutionality of detention for more than six months." *Id.*

As the Supreme Court recognized in *Zadvydas*, facts that justify a brief period of detention might not justify a longer period of detention. *See id.* ("as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink"). The fact that Laborde Casallas's detention now exceeds eight months and could continue indefinitely raises constitutional concerns. But under the status quo, Laborde Casallas has no opportunity to address them. The Court sees value in additional safeguards, like a bond hearing in which the government bears the burden of proof. *See Velasco Lopez v. Decker*, 978 F.3d 842, 853 (2d Cir. 2020)

4

(comparing the ease with which the government can gather evidence with the hurdles faced by a noncitizen in prolonged detention).

Third, the government has not established any legitimate interest in continuing to detain Laborde Casallas without presenting a justification. Remember: Judge Walleisa put the burden of proof on Laborde Casallas. At no point since his detention began November 2025 has ICE been required to show that either goal of immigration detention—to ensure the noncitizen's appearance at future immigration proceedings and to prevent danger to the community—outweighs Laborde Casallas's right to be free from physical restraint. A bond hearing where the government bears the burden of proof will preserve the two goals of immigration detention while accounting for the government's interest "in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Velasco Lopez*, 978 F.3d at 854.

The Court will thus order the respondents to either bring Laborde Casallas before an immigration judge for another bond hearing within ten days or release him under reasonable conditions of supervision while his removal proceeding is pending. To satisfy this Order, the hearing must include—and the resulting order must reflect—consideration of evidence properly submitted by the petitioner and the factors announced in *In re Guerra*, 24 I. & N. Dec. 37 (BIA 2006), and the government must bear the burden of proof to justify continued detention. If the respondents are unable to ensure Laborde Casallas

receives a bond hearing that complies with this Order within ten days, they must release him, but they may impose reasonable terms of supervision.

Accordingly, it is hereby

**ORDERED**:

Marcos Antonio Laborde Casallas's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED in part**.

(1)    Within **ten days** of this Opinion and Order, the respondents shall either (1) bring Laborde Casallas for an individualized bond hearing before an immigration judge or (2) release Laborde Casallas under reasonable conditions of supervision.   If the respondents release Laborde Casallas, they shall facilitate his transportation from the facility by notifying his counsel when and where he can be collected.

(2)    The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on July 31, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties or Record

6